**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Gerald Byerly, | ) | No. CV-04-0323-PHX-FJM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Deputy Warden, et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

The court has before it defendant's Motion for Summary Judgment (doc. 66), plaintiff's Response (doc. 69), and defendant's Reply (doc. 88); defendant's Motion to Strike the affidavit of plaintiff's expert (doc. 72), plaintiff's Response (doc. 78), and defendant's Reply (doc. 81); and defendant's Motion to Strike Plaintiff's Supplemental Rule 26(a)(2) Disclosure (doc. 83), plaintiff's Response (doc. 85), and defendant's Reply (doc. 90).  We also have before us defendant's unopposed Motion for Leave to File Supplemental Statement of Facts (doc. 87), plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum (doc. 92), and a Joint Motion to Expedite Ruling on Pending Motions (doc. 93).

I.

In this section 1983 case, plaintiff alleges that his Eighth Amendment rights were violated when he was assaulted by other inmates while incarcerated at the Alhambra Reception Center ("Alhambra Facility").  The only remaining defendant in this action is Dora

B. Schriro, who was serving as the Acting Director of the Arizona Department of Corrections ("ADC") during the relevant time frame.  Plaintiff claims that defendant Director Schriro does not have an adequate policy to protect inmates convicted of sex offenses who seek protective confinement.  He requests compensatory and punitive damages, as well as an order requiring the ADC to rewrite its policies regarding the safety of sex offenders at the Alhambra facility.

On September 24, 2003, plaintiff was transferred from the Maricopa County jail to ADC's custody at the Alhambra Facility and was placed with other inmates in the intake holding cell, awaiting processing. Shortly after his arrival at the Alhambra Facility, plaintiff met with a correctional officer and requested placement in protective segregation because of threats he had previously received while housed at the Maricopa County jail.  Plaintiff claimed he had been threatened by another inmate after it became known that he was a sex offender.  Once plaintiff requested protective segregation, he was placed in protective segregation review status, separated from general population inmates, and housed in cell D175, a 14-man cell with 13 other inmates who had also requested protective segregation. Plaintiff claims that the next day, on September 25, 2003, while housed in cell D175, he was beaten by at least two other inmates.

Plaintiff now argues that the protective segregation policy at Alhambra, which allowed him to be placed in a congregate cell with other prisoners, whose status and danger to others had not been investigated, created a substantial risk of serious harm in violation of his Eighth Amendment rights.

II.

The Prison Litigation Reform Act of 1996 ("PLRA") mandates exhaustion of available administrative remedies for all inmate section 1983 claims regarding prison conditions. 42 U.S.C. § 1997e(a).  We previously denied defendant's Motion to Dismiss this action for plaintiff's failure to exhaust administrative remedies.  Order (doc. 46).  We concluded that dismissal was improper at that stage because defendant had not provided sufficient evidence for us to determine whether plaintiff failed to exhaust available administrative remedies,

1   where a disputed issue of material fact remained as to whether plaintiff was denied access

2   to the grievance process.  Defendant has not presented any new evidence to show that

3   plaintiff failed to exhaust his administrative remedies, and therefore we do not reconsider that

4   issue here.

5                                                      III.

6           It is well established that prison officials have a duty under the Eighth Amendment

7   "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511

8   U.S. 825, 833, 114 S. Ct. 1970, 1976 (1994).  In Farmer, the Supreme Court set out a two-

9   pronged test to determine whether a failure to protect an inmate from assault by other inmates

10  rises to the level of a constitutional deprivation.  Id. at 834, 114 S. Ct. at 1977.  First, the

11  inmate must make an objective showing that "he is incarcerated under conditions posing a

12  substantial risk of serious harm." Id.  Second, the plaintiff must make a subjective showing

13  that the prison official had a "sufficiently culpable state of mind." Id.  In other words, the

14  official must have acted with "deliberate indifference to inmate health or safety." Id.

15  (quotation omitted). A prison official "is not liable under the Eighth Amendment for denying

16  an inmate humane conditions of confinement unless the official knows of and disregards an

17  excessive risk to inmate health or safety; the official must both be aware of the facts from

18  which the inference could be drawn that a substantial risk of serious harm exists, and he must

19  also draw the inference." Id. at 837, 114 S. Ct. at 1979.

20          ADC's protective segregation policy is set forth in Director's Instruction 67 ("DI 67"),

21  the stated purpose of which is to provide procedures for identifying and safeguarding inmates

22  with legitimate protection needs.  Upon entering the Alhambra Facility, inmates are advised

23  that protective segregation is available to any inmate with a verifiable need.  If an inmate

24  feels the need to request protective segregation, he or she can ask any staff member at any

25  time. DSOF ¶ 14.

26          When plaintiff requested voluntary placement in protective segregation, he was

27  promptly separated from the general population inmates, was placed in DI 67 protective

28  segregation review status, and was housed in cell D175, a 14-man cell with 13 other inmates

who had also requested protective segregation.  Although he concedes that he was promptly removed from the general population, he contends that his placement in a cell with other prisoners who claimed the need for protective segregation, but whose status and danger to others had not been investigated, presented a "substantial risk of serious harm, in a manner that was 'deliberately indifferent' to inmate health or safety."  Plaintiff's Response at 7.

Plaintiff's only support for his contention that DI 67, as implemented at the Alhambra Facility, violated his Eighth Amendment rights is the affidavit of his expert, Charles Montgomery, alleged to be "a nationally recognized independent expert in the field of corrections."  Montgomery Affidavit ¶ 1.  In order to establish that the first prong of Farmer, that conditions of his confinement presented an objective, "substantial risk of serious harm," Mr. Montgomery opined that "[t]he thorough identification of all inmates is essential and critical to the determination of where to house an inmate to ensure their physical safety and provide them reasonable protection from violent attacks by other inmates."  Id. ¶ 19.  Mr. Montgomery further stated that, based on his experience, there are some inmates who request protective segregation in order to "attack and harm those inmates who have sought protective segregation for legitimate reasons."  Id. ¶ 22.[1]

Here, there is little, if any, information presented as a factual basis to support the opinions expressed by Mr. Montgomery in his affidavit.  Mr. Montgomery simply opines that, based on his own experience, inmates without a legitimate need seek protective segregation for the purpose of assaulting other inmates.  Accordingly, Mr. Montgomery

---

[1]In her Motion to Strike the Montgomery affidavit (doc. 72), defendant argues that the opinions expressed by Mr. Montgomery in his affidavit are unsupported by any factual basis as required by Rule 56(e), Fed. R. Civ. P., and Rule 705, Fed. R. Evid., and therefore should be stricken.  Defendant also filed a Motion to Strike Plaintiff's Supplemental Rule 26(a)(2) Disclosure based on plaintiff's failure to file a proper Rule 26(a)(2) expert report.  Because we grant defendant's Motion for Summary Judgment even when considering the Montgomery affidavit and the so-called Rule 26(a)(2) report, we deny both of these Motions as moot (docs. 72, 83).

1    concludes that housing inmates seeking protective segregation with other inmates who have

2    not received a risk screening creates a substantial risk of serious harm.

3            Generally speaking, in the context of a motion for summary judgment, "an expert must

4    back up his opinion with specific facts." United States v. Various Slot Machines on Guam,

5    658 F.2d 697, 700 (9th Cir. 1981).  A party cannot defeat summary judgment by "replac[ing]

6    conclusory allegations of the complaint or answer with conclusory allegations of an

7    affidavit."  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188

8    (1990).  Although it is doubtful whether the opinions expressed in the Montgomery affidavit,

9    supported only by the expert's "own experience," are sufficient to establish that the

10   implementation of DI 67 at the Alhambra Facility created a substantial risk of serious harm,

11   we need not reach that issue because there is no evidence presented to establish the second

12   prong of Farmer, that the defendant acted with "deliberate indifference to inmate health or

13   safety."  Farmer, 511 U.S. at 834, 114 S. Ct. at 1977.

14           Plaintiff again relies exclusively on the Montgomery affidavit to establish that

15   Director Schriro acted with "subjective recklessness" or "with a conscious[] disregard [of a]

16   substantial risk of serious harm."  Id. at 839, 114 S. Ct. at 1980.  Mr. Montgomery opined

17   that "[a]ny responsible prison official would know that Defendant's policy of placing

18   unidentified and unclassified inmates together into a congregate cell would present an

19   obvious substantial risk to the inmates' safety."  Montgomery Affidavit ¶ 11.  Without

20   providing a factual basis for his opinion,  Mr. Montgomery simply states that "to a high

21   degree of probability and certainty Director Schriro knew that injury was substantially certain

22   to occur" because "any responsible prison official would know."  Id.  This is insufficient to

23   establish the subjective knowledge requirement of Farmer.

24           In Farmer, the Supreme Court held that a prison official is not liable unless he or she

25   subjectively "knows of and disregards an excessive risk to inmate health or safety."  Farmer,

26   511 U.S. at 837, 114 S. Ct. at 1979.  The Court expressly rejected the argument that "a prison

27   official who was unaware of a substantial risk of harm to an inmate may nevertheless be held

28   liable under the Eighth Amendment if the risk was obvious and a reasonable prison official

1  would have noticed it." <u>Id</u>. at 841-42, 114 S. Ct. at 1981.  Although a factfinder may infer
2  actual knowledge where evidence establishes that "a substantial risk of inmate attacks was
3  longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,"
4  <u>id</u>. at 842, 114 S. Ct. at 1981, the circumstances must also suggest that "the defendant-official
5  being sued had been exposed to information concerning the risk and thus 'must have known'
6  about it." <u>Id</u>.

7        The Montgomery affidavit falls far short of making this showing.  First, there is no
8  allegation that any risk created by policy DI 67, as implemented as the Alhambra Facility,
9  was "longstanding, pervasive, [or] well-documented."  Further, there are no circumstances
10 presented to suggest that Director Schriro had any information concerning this "obvious
11 risk."  Instead, the undisputed facts show that as of September 25, 2003, the date of the
12 assault, defendant had served as Acting Director for only eleven weeks and no allegation is
13 made that Schriro became aware of any safety issues regarding housing sex offenders at the
14 Alhambra facility either during or prior to her short tenure.  <u>DSOF</u> ¶¶ 49, 51.  The facts also
15 show that pursuant to A.R.S. § 41-1604(B)(2)(d), Director Schriro delegated the day to day
16 operations of the prisons to the Division Director of Offender Operations, and the operations
17 of the Alhambra Facility to the Warden of that facility.  <u>DSOF</u> ¶ 50.  There is no allegation
18 of any prior incident or safety concern due to the implementation of DI 67 at the Alhambra
19 Facility.

20                                          IV.

21        Based on the foregoing, we conclude that plaintiff has failed to set forth facts
22 sufficient to show that the conditions of his confinement violated his Eighth Amendment
23 rights.

24        Accordingly **IT IS ORDERED GRANTING** defendant's Motion for Summary
25 Judgment (doc. 66).

26        **IT IS FURTHER ORDERED DENYING** Defendant's Motion to Strike Affidavit
27 of Charles Montgomery as moot (doc. 72).

28

**IT IS FURTHER ORDERED DENYING** Defendant's Motion to Strike Plaintiff's Supplemental Rule 26(a)(2) Disclosure and Motion to Preclude the Testimony of Charles Montgomery as moot (doc. 83).

**IT IS FURTHER ORDERED GRANTING** Defendant's unopposed Motion for Leave to File Supplemental Statement of Facts (doc. 87).

**IT IS FURTHER ORDERED DENYING** Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum as moot (doc. 92).

**IT IS FURTHER ORDERED DENYING** the Joint Motion to Expedite Ruling on Pending Motions as moot (doc. 93).

DATED this 12th day of January, 2006.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge